DE CANALES ET AL. *v.* DYER CONSTR., CO., INC. ET AL.

[No. 470A54. Filed October 7, 1970. Rehearing denied November 17, 1970. Transfer denied March 3, 1971.]

* While Judge Cooper participated in a conference of the Judges, and concurred in this opinion, his untimely death occurred before the filing of this opinion.

538

David P. Stanton, David S. Stevens, of Gary, for appellants.

Charles K. Whitted, Strom and Whitted, of counsel, of Gary, for appellees.

PER CURIAM.—This matter comes to us for a judicial review of a finding and denial of recovery made by the Full Industrial Board of Indiana. Appellants, the widow and minor children of Rogelio Canales Cantu, deceased, brought this action against the appellees, Dyer Construction Company, Inc., and Beemsterboer Slag and Ballast Corp., for death benefits under the Indiana Workmen's Compensation Act. Hearing was had before a single member of the Industrial Board on November 18, 1969, and the appellants were awarded nothing by way of their application. Thereafter, review was had before the Full Board which entered the following finding and denial of an award:

> "The full Industrial Board of Indiana, by a majority of its members having heard the arguments of counsel, having reviewed all the facts in said cause, and being duly advised in the premises, now finds:
>
> "That on the 2nd day of November, 1967, one Rogelio Canales Cantu, plaintiffs' decedent was in the employ of the defendants at an average weekly wage in excess of $85.00; that on said date said decedent died from causes wholly unrelated to his employment by defendants herein.
>
> "The full Industrial Board of Indiana, by a majority of all its members, now finds for the defendants and against the plaintiffs on plaintiffs' Form 10 application for compensation heretofore filed on the 21st day of December, 1968.

### AWARD

> "IT IS THEREFORE CONSIDERED, ORDERED AND ADJUDGED by the full Industrial Board of Indiana, by a majority of its members, that plaintiffs take nothing by their Form 10 application for the adjustment of claim for compensation, filed with the Industrial Board of Indiana on the 21st day of December, 1968."

Appellants assign as error that "the said Award by the Full Industrial Board of the State of Indiana is contrary to law."

A succinct summarization of the pertinent evidence most favorable to appellees may be stated as follows:

The appellants' decedent, Rogelio Canales Cantu, was employed by appellees as a construction laborer at an average weekly wage in excess of $85. The duties of his employment involved spraying wooden forms with oil in order that they might easily be removed once concrete had been poured and dried. The job site on which decedent worked consisted of a one-fourth mile segment of highway Route 12 in Porter County, Indiana.

On November 2, 1967, at 3:30 o'clock P.M., CST, the decedent met his death instantly as a result of being struck by a westbound train owned and operated by the South Shore Railroad Company.

The approximate location of this accident was stipulated by the parties to this appeal to have been as follows:

" . . . at a place one thousand four hundred eighty feet west of State Road 149, and one hundred eighty-five feet north of old U. S. Highway No. 12 in Porter County, Indiana, a place off of and not a part of defendant's construction site . . . "

The record further reveals that appellants' decedent on the day in question, upon instruction of his supervisor, ceased to perform the duties of his employment at 3:00 o'clock P.M., CST, one-half hour prior to the time he met his death. According to the testimony of Valentin Llerena, a fellow worker who decedent accompanied to and from the job site in Llerena's automobile, he and the decedent were waiting for Llerena's son to return with his father's coat before leaving work for the day when " . . . Mr. Cantu said he had to go to the bathroom and there wasn't one there, so he had to go into the woods, and when he had not returned and my son was already there, then was when the men from the train approached us and told us what had happened to him."

The parties to this appeal, as previously cited, *supra,* stipulated that the location where decedent chose to relieve himself and was subsequently killed was "a place off of and not

a part of defendant's construction site." Precisely how great a distance existed between defendants' job site on new Highway No. 12 and the South Shore right-of-way was not put into evidence. However, the following testimony, by the supervisor of the construction site, does indicate the approximate proximity of the job site to the place where decedent was struck:

"Q   Now, in order to get to where Mr. Cantu was struck by a train he would have to leave the construction site on new Route 12, cross the area between new Route 12 and old Route 12, go across old Route 12, across a field or a strip of ground, and then onto the South Shore right-of-way, would he not?

A   Yes.

Q   Is that a considerable distance?

A   Yes, I would say considerable distance."

The same witness also testified that there were toilet facilities on the job site, as well as a ditch which was obscured from public view, and that irrespective of the facilities provided, it was the custom of men on construction to relieve themselves in the immediate vicinity of their work. The construction supervisor further testified that, to his knowledge, the men did not cross the South Shore tracks to use the bushes on the north side of the tracks in order to relieve themselves.

The sole issue for review in this appeal is whether or not the accident in which decedent was fatally injured arose out of and in the course of his employment.

It would be an impossible task at this time to review the mutitude of litigation involving construction of the statutory phraseology "arising out of and in the course of employment."[1]   Accordingly, we will rely on what we believed,

---

1.   Citing footnote 4 of Justice Murphy's opinion in *Cardillo* v. *Liberty Mutual Co.* (1947) 330 U. S. 469, 67 S. Ct. 801, at p. 470:
   "4. 'The few and seemingly simple words "arising out of and in the course of the employment" have been the fruitful (or fruitless)

and presently believe, to be the generally accepted definition of "arising out of and in the course of employment" as put forth in *B.P.O. Elks, #209* v. *Sponholtz* (1969), 144 Ind. App. 150, 244 N. E. 2d 923 (Rehearing Denied), at page 927:

"This Court, on judicial review of many workmen's compensation cases, has defined the words 'arising out of' and 'in the course of' the employment. The generally accepted definition of the former phrase is adequately stated in the case of *Empire Health, etc., Ins., Co.* v. *Purcell* (1921), 76 Ind. App. 551, 132 N. E. 664, and reaffirmed and approved in the case of *Williams* v. *School City of Winchester* (1937), 104 Ind. App. 83, 95, 10 N. E. 2d 314, 319, as follows:

'An accident is said to arise out of the employment when there is a causal connection between it and the performance of some service of the employment. The causal relation is established when the accident is shown to have arisen *out of a risk* which a reasonable person might have comprehended *as incidental to the employment at the time of entering into it,* or when the evidence shows an incidental connection *between the conditions under which the employé works and his resulting injury.*' (Our emphasis)"

"The stated doctrine has been accepted and reaffirmed in many cases. See, among others, the following: *Mathews* v. *Jim and Ed's Service Station* (1963), 136 Ind. App. 28, 196 N. E. 2d 282; *Betasso* v. *Snow-Hill Coal Corp.* (1963), 135 Ind. App. 396, 189 N. E. 2d 833; *Mishawaka Rubber & Woolen Manufacturing Company* v. *Walker, Gdn., et al.,* (1949), (T.D.), 119 Ind. App. 309, 84 N. E. 2d 897; *E. R. Burget Co.* v. *Zupin* (1948), 118 Ind. App. 644, 649, 82 N. E. 2d 897; *Broderick Company* v. *Fleming et al.,* (1946), (T.D.), 116 Ind. App. 668, 675, 65 N. E. 2d 257; *Tom Joyce 7 Up Company* v. *Layman* (1942), 112 Ind. App.

source of a mass of decisions turning upon nice distinctions and supported by refinements so subtle as to leave the mind of the reader in a maze of confusion. From their number counsel can, in most cases, cite what seems to be an authority for resolving in his favour, on whichever side he may be, the question in dispute.' Lord Wrenbury in *Herbert* v. *Fox & Co.* [1916] 1 A.C. 405, 419. See also Dodd, *Administration of Workmen's Compensation* (1936), pp. 680-687; Horovitz, '*Modern Trends in Workmen's Compensation,*' 21 Ind. L. J. 473, 497-564; Horovitz, *Injury and Death Under Workmen's Compensation Laws* (1944), pp. 93-173; Brown, ' "*Arising Out Of And In The Course Of The Employment*" In Workmen's Compensation Laws,' 7 Wis. L. Rev. 15, 67, 8 Wis. L. Rev. 134, 217."

369, 44 N. E. 2d 998; *American Steel Foundries* v. *Czapala* (1942), 112 Ind. App. 212, 215, 44 N. E. 2d 204; *Montgomery* v. *Brown et al.,* (1940), (T.D. 1941), 109 Ind. App. 95, 27 N. E. 2d 884."

In the present case, the evidence wholly fails to establish the requisite causal relation between decedent's fatal accident and his employment. We cannot, therefore, state as a matter of law that this accident "is shown to have arisen out of a risk which a reasonable person might have comprehended as incidental to the employment at the time of entering into it, or when the evidence shows an incidental connection between the conditions under which the employé works and his resulting injury." The record discloses three material facts which *coalesce* to prevent recovery by the appellants. These three material facts involve the following essential elements: the time, location, and nature of decedent's accident. As previously stated, the time of the accident was one-half hour after decedent had ceased to perform the duties of his employment. The location of the accident as stipulated by the parties to this appeal was " . . . a place off of and not a part of defendant's construction site." The nature of decedent's accident was such that it could not be considered to have resulted from the customary practices of decedent and his fellow workers. While testimony was given to the effect that it was the custom of decedent to relieve himself each day immediately prior to departing the job site, it was not, however, shown that it was the custom of decedent or his fellow employees to leave the job site and walk several hundred feet, crossing U. S. Highway No. 12 and the South Shore Railroad tracks, in order to relieve themselves. On the contrary, the job supervisor testified, *supra,* that there were toilet facilities on the job site, but in spite of this, it was the custom of the workers to relieve themselves in the immediate vicinity where they happened to be.

Appellants, in their brief, cite numerous cases where em-

ployees were allowed to recover for injuries sustained after the conclusion of the normal working day or for injuries sustained while off the employer's premises. However, because of essential differences between those cases and the present one, we do not feel bound to come to the same result as was reached in the cases cited by appellants.

*Prater* v. *Indiana Briquetting Corp.* (1969), 253 Ind. 83, 251 N. E. 2d 810, cited by appellants, is similar to the present case in that the decedent in that case was struck and killed by a train at a location which was not a part of his employer's premises. However, in the *Prater* case, unlike the present case, the decedent had not yet quit work for the day and he was performing an act (i.e., going for cokes) which was shown to be a customary practice to which his employer had acquiesced. In the present case the decedent was not injured during the actual time of his employment, nor in departing from his job site to relieve himself, could he be said to be performing an act which could be considered a customary practice of his employment to which his employer acquiesced, when his employer had provided facilities for that purpose on the job site.

Appellants further cite the case of *U. S. Steel Corporation* v. *Brown* (1967), 142 Ind. App. 18, 231 N. E. 2d 839, (Transfer Denied), where the claimant, after quitting work for the day, sustained injuries as the result of a fall outside of the building in which she was employed. However, in that case the claimant was still on her employer's property and was using the necessary route of ingress and egress to and from the building in which she worked.

In *Reed et al.* v. *Brown et al.* (1958), 129 Ind. App. 75, 152 N. E. 2d 257, (Transfer Denied), also cited by appellants, three material facts existed which were essential to the claimant's recovery: (1) crossing the railroad tracks was a necessary means of ingress and egress to and from the employer's premises; (2) it was the custom of employees to

cross the railroad tracks; (3) the employees crossed the railroad tracks with the full knowledge and acquiescence of the employer. None of these three essential facts in the *Reed* case was shown to exist in the present case.

The appellants have relied heavily on the authority of the above-mentioned cases; however, the material facts of said cases are so dissimilar to those in the present case as to render appellants' reliance thereon misplaced.

The courts of this state have consistently held that the question of whether or not an employee's accident arose out of, and in the course of, employment is one which must be governed by the particular circumstances of the case. *Reed et al.* v. *Brown et al.*, *supra; Indian Creek Coal, etc., Co.* v. *Wehr* (1920), 74 Ind. App. 141, 151, 127 N. E. 202, 128 N. E. 765, (Rehearing Denied) ; *Jeffries* v. *Pitman-Moore Co.* (1925), 83 Ind. App. 159, 161, 147 N. E. 919; Small, *Workmen's Compensation Law,* § 7.7, p. 170; Horovitz, *Modern Trends in Workmen's Compensation,* 21 I.L.J.; pp. 551, 552, 553. The particular circumstances of the instant case are significantly distinguishable from those of the cases cited by appellants where the claimant was permitted to recover. Accordingly, a different result in the present case is not without reasonable justification.

The appellants urge that if this court follows the line of cases which call for a liberal construction of the Workmen's Compensation Act, then the determination of the Industrial Board against appellants should be reversed.

This court has repeatedly stated its belief that in order to further the humane purposes of the workmen's compensation statute the Act should be liberally construed. We have no desire or reason to deviate from that belief at this time. However, a liberal interpretation of the Act does not operate to negate the claimant's burden of establishing the material facts essential to recovery. The appellants herein have failed to show either a direct or incidental relationship between decedent's accident and his employment, and, therefore, even

a liberal construction of the Act will not enhance their cause to the point of permitting recovery.

For the foregoing reasons, the award of the Full Industrial Board is affirmed.

NOTE.—Reported in 262 N. E. 2d 543.